IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**CHARLESTON DIVISION**

TURNPIKE FORD, INC.,

                Plaintiff,

v.                                     CIVIL ACTION NO.  2:05-cv-00398

FORD MOTOR COMPANY and
FORD MOTOR CREDIT COMPANY,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is a motion to dismiss [Docket 9] filed by Ford Motor Credit Company ("Ford Credit").  Ford Credit claims the plaintiff's Complaint fails to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons explained herein, the court **DENIES** Ford Credit's motion.

*I. Motion To Dismiss Standard*

To decide a motion to dismiss, the allegations of the complaint are taken as true and dismissals are allowed "only in very limited circumstances." *Rogers v. Jefferson-Pilot Life Ins. Co.*, 883 F.2d 324, 325 (4th Cir. 1989).  Dismissal is proper only when no set of facts can be proven to support the complaint's allegations.  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002).  To make this determination, the court will view the complaint in the light most favorable to the plaintiff. *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994).  Accordingly, the court analyzes the facts as stated by the complaint.

*II. Background*

The plaintiff, Turnpike Ford, Incorporated ("Turnpike"), pleads three claims in its Complaint. Count One alleges Ford Motor Company ("Ford Motor") breached the Sales and Service Agreement it and Turnpike entered into on June 3, 1974.  (Compl. ¶¶ 59–67.)  Specifically, Turnpike claims Ford Motor breached the contract by redesignating Turnpike's primary market area ("PMA") in 1996 without notifying Turnpike of the change until May 10, 2002.  (*Id*. ¶ 62.)  Ford Motor assigns its dealers a specific primary market area based on multiple variables:  the proximity of census tracts to the dealer; natural and man-made barriers affecting the movement of customers; traffic-flow patterns; and past selling patterns of the Ford dealers in the area.  (*Id*. ¶ 16.)  Turnpike also claims Ford Motor breached its contract by assisting other area dealers, notably Bert Wolfe Ford and Moses Ford, in planning and operating multiple off-site tent sales without Turnpike's approval.  (*Id*. ¶ 65.) Count One does not make out a claim against Ford Credit; therefore, examining the sufficiency of Count One's allegations is not necessary to address the pending motion.

Count Two claims Ford Motor and Ford Credit violated the Automobile Dealers' Day in Court Act ("ADDCA"), 15 U.S.C. §§ 1221–1226.  (*Id*. ¶¶ 68–73.)  The plaintiff cites the following as ADDCA violations:  Ford Motor's manipulation of Turnpike's inventory by eliminating portions of Turnpike's PMA without notice; both defendants improperly assisting Bert Wolfe Ford and Moses Ford in holding multiple "Ford Tent Sales" within Turnpike's designated PMA without receiving Turnpike's written consent; and the defendants' failure to act in good faith.  (*Id*. ¶¶ 70–72.) In the pending motion, Ford Credit argues it cannot be held liable under the ADDCA and asks the court to dismiss it from Count Two.  (Mem. Supp. Mot. To Dismiss 5.)

Count Three alleges Ford Motor and Ford Credit violated the West Virginia Motor Vehicle Dealers, Distributors, Wholesalers, and Manufacturers Act ("WV Act"), W. Va. Code §§ 17A-6A-1 to -18 (2004).  (*Id*. ¶¶ 74–80.)  Turnpike claims the same conduct that violated the ADDCA also violated the WV Act.  (*Id*. ¶¶ 75–77.)  In the pending motion, Ford Credit also argues it cannot be held liable under the WV Act.  (Mem. Supp. Mot. To Dismiss 5.)

### III. Count Two—The ADDCA Claim

The issue before the court is whether Ford Credit is susceptible to Turnpike's suit under the ADDCA.  The ADDCA authorizes federal court actions by automobile dealers against automobile manufacturers. 15 U.S.C. § 1222 (2000).  The ADDCA defines "automobile manufacturer" as "any person, partnership, corporation, association, or other form of business enterprise engaged in the manufacturing or assembling of [automobiles], including any person, partnership, or corporation which acts for and is under the *control* of such manufacturer . . . ." *Id*. § 1221(a) (emphasis added). Although this circuit has not analyzed whether a manufacturer's credit financing company is a manufacturer as contemplated by the ADDCA, other federal courts have examined the issue.

In *Colonial Ford, Inc. v. Ford Motor Co.*, 592 F.2d 1126, 1128 (10th Cir. 1979), the Tenth Circuit addressed whether Ford Credit fell within the ADDCA's definition of "automobile manufacturer."  The court held Ford Credit was susceptible to suit under the ADDCA because it was a wholly owned subsidiary under the control of Ford Motor, a manufacturer.  *Colonial Ford*, 592 F.2d at 1129.  The court stated the ADDCA's "'control' requirement is satisfied by showing corporate ownership and confluence of interest."  *Id*.  It based this reasoning on the ADDCA's broad, remedial purposes. *Id*.  "The Act is designed to curtail the kinds of coercion and intimidation

-3-

of retail dealers by manufacturers made possible by the parties' relative economic inequality." *Id.*; *see also DeCantis v. Mid-Atlantic Toyota Distribs., Inc.*, 371 F. Supp. 1238, 1241 (E.D. Va. 1974) (addressing ADDCA's purposes). The court explained that a wholly owned subsidiary working to facilitate the parent manufacturer's distributive activities naturally would be promoting the parent's interest. *Colonial Ford*, 592 F.2d at 1129 (stating any other belief "would be unrealistic"). The ability to hold nontraditional manufacturers, such as financing companies, liable under the ADDCA is necessary to accomplish the Act's goals. *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 550 F. Supp. 1199, 1201–02 (N.D. Ill. 1982).

Since *Colonial Ford*, courts addressing the applicability of the ADDCA to financing companies have clarified the analysis. *See Stamps v. Ford Motor Co.*, 650 F. Supp. 390, 396 (N.D. Ga. 1986) ("In the final analysis, however, the Tenth Circuit's approach is incomplete."). Courts have stated that even if an automobile manufacturer controls a financing company, the financing company cannot be a "manufacturer" as defined by the ADDCA unless it is also a party to the franchise agreement. *Id.* Nonetheless, financing companies still can be susceptible to suit based on general agency principles. *Lazar's Auto Sales, Inc. v. Chrysler Fin. Corp.*, 83 F. Supp. 2d 384, 387 (S.D.N.Y. 2000); *Devalk*, 550 F. Supp. at 1202. As long as a financing company is acting as an agent of the manufacturer in facilitating the manufacturer's automotive business, its actions are cognizable under the ADDCA, even if the financing company was not actually a party to the franchising agreement. *Keys Jeep Eagle, Inc. v. Chrysler Corp.*, 897 F. Supp. 1437, 1444 (S.D. Fla. 1995); *Stamps*, 650 F. Supp. at 396.

Therefore, the key question is whether the financing company acted to facilitate the sale of the manufacturer's automotive sales; if so, the financing company is susceptible to suit. *Stamps*, 650

-4-

F. Supp. at 396.   Deciding whether a financing company acted on behalf of an automobile manufacturer is a question of fact.  *See Gen. Motors Acceptance Corp. v. Marlar*, 761 F.2d 1517, 1521 (11th Cir. 1985) (affirming jury's finding that agency was established by credible testimony). The Eighth Circuit held that direct evidence of an agency relationship was not required and upheld a jury's finding of agency on little factual support.  *Olson Motor Co. v. Gen. Motors Corp.*, 703 F.2d 284, 288 (8th Cir. 1983).  As a general rule, courts have been reluctant to dismiss ADDCA claims without reaching their merits.  *Stamps*, 650 F. Supp. at 396.

In this case, the plaintiff alleges Ford Credit agreed to assist Ford Motor, Bert Wolfe Ford, and Moses Ford, in conducting off-site tent sales.  Specifically, Ford Credit provided financing for the tent-sales' customers.  These assertions, which the court must assume as true for the purposes of this motion, are sufficient to state a claim against Ford Credit.  The assertions indicate, at the least, possible proof of an agency relationship between Ford Motor and Ford Credit in the distribution of automobiles manufactured by Ford Motor.  *See DeValk*, 550 F. Supp. at 1202 (denying Ford Credit's motion to dismiss on same grounds).

### IV. Count Three—The State Claim

Although no courts have determined whether financing companies are susceptible to suit under the WV Act, the same reasoning employed in Part III of this Opinion aids this examination. The WV Act defines "manufacturer" slightly different than the ADDCA:  "'Manufacturer' means any person who manufactures or assembles new motor vehicles; or any distributor, factory branch or factory representative."  W. Va. Code § 17A-6A-3 (2004).  At first blush, this appears to be a narrower definition than the ADDCA's.  The WV Act, however, explicitly defines "factory

representative" as "an agent or employee of a manufacturer . . . retained or employed for the purpose of making or promoting the sale of new motor vehicles."  *Id.*

Therefore, whether Ford Credit is susceptible to Turnpike's claim under the WV Act requires the same analysis used to determine whether it is susceptible to the ADDCA claim.  If Ford Credit acted as an agent of Ford Motor, then Ford Credit is susceptible to suit under the WV Act.  Because Turnpike's allegations assert, at the least, possible proof of an agency relationship, Turnpike states a claim upon which relief may be granted under the WV Act.

*V. Conclusion*

Turnpike states cognizable claims against Ford Credit in Counts Two and Three. Accordingly, the court **DENIES** Ford Credit's motion to dismiss.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party, and **DIRECTS** the Clerk to post this published opinion at http://www.wvsd.uscourts.gov.

ENTER:        February 22, 2006

JOSEPH  R.  GOODWIN
UNITED STATES DISTRICT JUDGE

-6-

John K. Cecil
The Tinney Law Firm
P.O. Box 3752
Charleston, WV 25337-3752

John H. Tinney, Jr.
The Tinney Law Firm
P.O. Box 3752
Charleston, WV 25337-3752

Kimberly R. Fields
The Tinney Law Firm
P.O. Box 3752
Charleston, WV 25337-3752

Carla W. McMillian
Sutherland Asbill & Brennan
999 Peachtree Street, NE
Atlanta, GA 30309-3396

Richard D. Jones
Flaherty Sensabaugh & Bonasso
P.O. Box 3843
Charleston, WV 25338-3843

Suzanne M. Alford
Sutherland Asbill & Brennan
999 Peachtree Street, NE
Atlanta, GA 30309-3396

Thomas W. Curvin
Sutherland Asbill & Brennan
999 Peachtree Street, NE
Atlanta, GA 30309-3396